UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GUILLERMO AREVALO, *on behalf of himself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>RTG FURNITURE CORP. OF GEORGIA,<br><br>Defendant. | **Civil Action File No.**<br><br>**1:17-cv-04035-ELR** |

# **FIRST AMENDED COMPLAINT**

Plaintiff Guillermo Arevalo ("Mr. Arevalo") files this First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B).

1. This is a complaint for unpaid overtime wages under the Fair Labor Standards Act ("FLSA").

2. Mr. Arevalo files this complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and other similarly-situated individuals.

3. This Court has jurisdiction over Mr. Arevalo's claims, and venue is proper in this Court.

4. Mr. Arevalo is a resident of Gwinnett County, Georgia. He submits to the jurisdiction of the Court.

5. Defendant RTG Furniture Corp. of Georgia ("RTG") is a Florida Corporation that operates furniture distribution centers in Georgia, including one located in Suwanee, Georgia.

6. During each of the three years preceding the filing of Mr. Arevalo's initial complaint, RTG's annual revenue exceeded $500,000.

7. During each of the three years preceding the filing of Mr. Arevalo's initial complaint, RTG employed numerous individuals (more than 20) who were engaged in interstate commerce.

8. A primary function of RTG's distribution center in Suwanee is to receive and distribute furniture to Rooms to Go retail stores in Georgia and other southeastern states.  In performing this function, RTG receives shipments of furniture from manufacturers and other vendors.  All furniture received by RTG's distribution center in Suwanee originates from outside the state of Georgia.  After receiving furniture from out-of-state manufacturers and vendors, RTG distributes it to various Rooms to Go retail stores in Georgia and other southeastern states.

9. RTG's Suwanee distribution center also processes and ships individual customer orders received through the Rooms to Go website at www.roomstogo.com.  A customer can place an order through

www.roomstogo.com from anywhere in the world. Rooms to Go accepts orders through its website for delivery to Alabama, Florida, Georgia, South Carolina, North Carolina, Tennessee, Mississippi, Texas, Virginia and Kentucky, and to certain areas in Oklahoma, Massachusetts, New York, New Jersey, Pennsylvania, Maryland, Delaware, Connecticut, Louisiana, Rhode Island and Washington, D.C.

10. RTG employs dozens of individuals at its Suwanee distribution center, all of whom are actively engaged in the interstate receiving, distribution, and shipment of furniture described above in Paragraphs 8 and 9.

11. In addition, within the three-year period preceding the filing of Mr. Arevalo's initial complaint, many of RTG's employees, including Mr. Arevalo, frequently travel across state lines to work at Rooms to Go distribution centers in other states.

12. Mr. Arevalo is currently employed as a supervisor at RTG's distribution center in Suwanee. He has been employed in this position since 1999.

13. RTG controls the terms and conditions of Mr. Arevalo's employment. For example, RTG determines Mr. Arevalo's working hours, oversees and directs his work, and provides Mr. Arevalo's compensation and related benefits, like health insurance.

14. RTG can discipline Mr. Arevalo, up to and including terminating his employment.

15. RTG has issued Mr. Arevalo an IRS Form W-2 every year since 1999.

16. Through its submission of quarterly wage reports, RTG has identified Mr. Arevalo as an employee of the company to the Georgia Department of Labor every year since 1999.

17. RTG maintains Mr. Arevalo's employment records.

18. As a supervisor, Ms. Arevalo is responsible for overseeing and participating in the movement of furniture into and out of RTG's Suwanee distribution center.  On a daily basis, he physically unloads furniture from delivery trucks that have been travelling interstate, as they are delivering furniture from out-of-state manufacturers and vendors.  He also loads furniture onto delivery trucks that will travel both intrastate and interstate, as their intended destinations are Rooms to Go retail stores in Georgia and other nearby states.

19. All other supervisors employed by RTG perform these same duties, i.e., loading and unloading delivery trucks that are travelling interstate.

20. As a supervisor, Mr. Arevalo also participates in processing individual customer orders received through the Rooms to Go website.  In performing this duty, Mr. Arevalo participates in retrieving the item ordered, preparing it

for shipment, and loading it onto a delivery truck for destinations both inside and outside the state of Georgia.

21. All other supervisors employed by RTG perform these same duties, i.e., processing internet orders for intrastate and interstate shipment.

22. As a supervisor, prior to January 1, 2017, RTG paid Mr. Arevalo using the so-called "fluctuating workweek" method ("FWW method"), under which Mr. Arevalo was supposed to receive a set rate of pay per week no matter the number of hours he worked, plus half of his regular hourly rate for each working hour over 40 per week.

23. During his employment with RTG, including the three-year period preceding the filing of his initial complaint, Mr. Arevalo routinely worked more than 40 hours per week.

24. For weeks during which Mr. Arevalo worked more than 40 hours, due to RTG's use of the FWW method, Mr. Arevalo received only half-time, instead of time-and-a-half, of his regular hourly rate for each working hour over 40.

25. At various times during his employment as a supervisor, including during the three-year period preceding the filing of Mr. Arevalo's initial complaint, Mr. Arevalo worked both the "day shift" and the "night shift."

26. For any week during which Mr. Arevalo worked the night shift, RTG paid him a "shift bonus" of $50 per week.  Thus, if Mr. Arevalo worked the night shift during any given week, he received the $50 shift bonus, and if he did not work the night shift during any given week, he did not receive the $50 shift bonus.

27. RTG also paid Mr. Arevalo a weekly "survey bonus" in varying amounts.  The amount of the survey bonus was determined by the number of positive customer satisfaction surveys received by the company.

28. Because of RTG's payment of shift and survey bonuses, Mr. Arevalo was not guaranteed the same rate of pay regardless of the number of hours he worked.  Instead, under RTG's compensation policy, his weekly pay fluctuated depending on whether he worked the night shift during a given week and whether he received a survey bonus.

29. According to applicable case law and U.S. Department of Labor regulations, the shift and survey bonuses paid by RTG invalidated the company's FWW method of compensation.  Therefore, Mr. Arevalo was entitled to time-and-a-half, not half-time, of his regular hourly rate for each of his working hours over 40 per week.

30. RTG stopped using the FWW method to compensate its distribution center supervisors on December 31, 2016.

31. Beginning January 1, 2017, RTG began paying its distribution center supervisors, including Mr. Arevalo, on an hourly basis.

32. Therefore, since January 1, 2017, Mr. Arevalo receives 1.5 times his regular hourly rate for each of his working hours over 40 per week.

33. Prior to January 1, 2017, RTG compensated all supervisors in its distribution centers using the same FWW method of compensation.

34. Prior to January 1, 2017, RTG paid all supervisors in its distribution centers a $50 weekly shift bonus for working the night shift.

35. Prior to January 1, 2017, RTG paid all supervisors in its distribution centers a survey bonus if they met the criteria to receive the bonus.

36. Upon information and belief, RTG's decision to pay its supervisors using the FWW method was not based on a legal opinion or other legal advice from an attorney that such method, under the existing factual circumstances, would not violate the FLSA or applicable U.S. Department of Labor regulations.

37. Upon information and belief, prior to implementing the FWW method with respect to its supervisors, RTG did not seek a legal opinion or other legal advice from an attorney as to whether such method, under the existing factual circumstances, would violate the FLSA or applicable U.S. Department of Labor regulations.

38. Upon information and belief, RTG's decision to pay its supervisors using the FWW method was not based on a formal opinion letter or other guidance from the U.S. Department of Labor that such method, under the existing factual circumstances, would not violate the FLSA or applicable U.S. Department of Labor regulations.

39. Upon information and belief, prior to implementing the FWW method with respect to its supervisors, RTG did not seek a formal opinion letter or other guidance from the U.S. Department of Labor as to whether such method, under the existing factual circumstances, would violate the FLSA or applicable U.S. Department of Labor regulations.

40. During the period that RTG paid its supervisors using the FWW method, RTG was or should have been aware of the applicable case law and U.S. Department of Labor regulations indicating that the FWW method is invalidated by certain bonus payments, such as the shift and survey bonuses described above.

41. Had RTG sought legal advice from an attorney or guidance from the U.S. Department of Labor with respect to its application of the FWW method, it would have learned that utilizing such method under the circumstances presented in this case violates the FLSA and applicable U.S. Department of

Labor regulations.

42. COUNT 1 – Due to its application of an invalid FWW method of compensation, RTG violated the FLSA by failing to pay Mr. Arevalo and other distribution center supervisors 1.5 times their regular rate of pay for each working hour over 40 per week.

43. RTG's violation of the FLSA described above was willful because it either knew or should have known that its use of the FWW method under the circumstances in this case was improper.

44. RTG's violation of the FLSA described above was willful because RTG showed reckless disregard as to whether its use of the FWW method under the circumstances of this case was proper.

Based on the above facts, Mr. Arevalo requests a jury trial on all triable issues and asks the Court for the following relief for himself and all other distribution center supervisors who opt in as plaintiffs in this lawsuit: unpaid overtime wages, liquidated damages as permitted by the FLSA, prejudgment interest, litigation costs, attorneys' fees, and other relief deemed appropriate by the Court.

Respectfully submitted on December 6, 2017.

*s/ Regan Keebaugh*
Regan Keebaugh
Georgia Bar No. 535500

Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
T: (678) 271-0300
F: (678) 271-0311
regan@decaturlegal.com

## Certificate of Service

I certify that I filed the foregoing document using the Court's electronic filing system on December 6, 2017, which will send email notification of such filing to all counsel or record in this matter.

*s/ Regan Keebaugh*
Regan Keebaugh
Georgia Bar No. 535500